**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**DENNIS R. ELLETT,**

                         **Plaintiff,**

                v.                                    **1:06-CV-1079
                                                              (FJS)**

**COMMISSIONER OF SOCIAL SECURITY,**

                         **Defendant.**
_____

**APPEARANCES**                                          **OF COUNSEL**

**OFFICE OF PETER M. MARGOLIUS**        **PETER M. MARGOLIUS, ESQ.**
7 Howard Street
Catskill, New York 12414
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**     **SOMMATTIE RAMRUP, ESQ.**
**OFFICE OF REGIONAL**                            **MARLA PIAZZA SIEGEL, ESQ.**
**GENERAL COUNSEL - REGION II**
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff brought this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying his application for Disability Insurance Benefits ("DIB"). Plaintiff requests that the Court reverse the Administrative Law Judge's ("ALJ's") decision or remand the case to the ALJ for further evaluation of the evidence.

      Currently before this Court are Plaintiff's and Defendant's cross-motions for judgment on the

pleadings or, in the alternative, for summary judgment. *See generally* Dkt. Nos. 7, 13.

## II. BACKGROUND

**A.     Procedural history**

Plaintiff, then forty, filed an application for DIB on or about November 5, 1999. *See* Supplemental Administrative Record ("SAR") at 43-45. In a disability report dated March 29, 2001, Plaintiff cited migraine headaches, vertigo, and severe neck pain as his disabling conditions. *See id*. at 233, 247. The Social Security Administration denied Plaintiff's request on August 27, 2001. *See id*. at 38.

In a disability report dated December 3, 2002, Plaintiff cited headaches, dizziness, loss of balance, blurred vision, and ringing in his left ear as his disabling conditions. *See* SAR at 268, 276. Plaintiff again filed for DIB on or about December 20, 2002, when he was forty-three. *See id*. at 228-30. The Social Security Administration denied Plaintiff's request on April 17, 2003. *See id*. at 208. Plaintiff filed a timely request for a hearing on June 4, 2003, which was held before ALJ Thomas Zolezzi in Albany, New York, on January 9, 2004. *See id*. at 215, 402. Attorney Peter M. Margolius represented Plaintiff, who appeared and testified. *See id*. at 402, 404.

ALJ Zolezzi considered the case *de novo* and issued a written decision denying Plaintiff's application on April 19, 2004. *See* SAR at 18-26. In that decision, ALJ Zolezzi stated that he considered all of the evidence in the record and made the following findings:

> 1) Plaintiff met the non-disability requirements for a period of disability and DIB set forth in Section 216(i) of the Act and was insured for benefits through the date of the ALJ's decision.
>
> 2) Plaintiff had not engaged in substantial gainful activity ("SGA")

>since his alleged onset date.
>
>3) Plaintiff suffered from a severe impairment.
>
>4) Plaintiff's impairment did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").
>
>5) Plaintiff's allegations regarding his limitations were not entirely credible.
>
>6) The ALJ carefully considered all of the medical opinions in the record regarding the severity of Plaintiff's impairment.
>
>7) Plaintiff was unable to perform any of his past relevant work.
>
>8) Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work, as contemplated by 20 CFR §§ 404.1567 and/or 416.967.
>
>9) Based on an exertional capacity for a wide range of light work and Plaintiff's then age of forty-five, his high school education, and semi-skilled and skilled work experience, Medical-Vocational Rule 202.21 directed a finding of "not disabled."

*See* SAR at 25-26.

The ALJ's decision became the Commissioner's final decision on July 7, 2006, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See* SAR at 4.

Plaintiff commenced this action on September 7, 2006, *see* Dkt. No. 1, and filed a supporting brief on August 6, 2007, *see* Dkt. No. 7. Defendant filed his reply brief on October 30, 2007. *See* Dkt. No. 13.

**B.    Plaintiff's medical history**

Plaintiff was involved in a motor vehicle accident on March 30, 1999. *See* SAR at 191-93.

-3-

Although he went home following the accident, he went to the emergency room at St. Peter's Hospital later that day, complaining of a headache and tightness in his neck. *See id*. at 191. Plaintiff received Ultram[1] to treat his pain, and St. Peter's discharged him. *See id*. at 193.

Plaintiff saw Dr. Teresa Sirico on April 19, 1999. *See* SAR 203. Plaintiff complained of headaches and pain in the back left side of his skull since the accident. *See id*. at 203. Dr. Sirico found that Plaintiff experienced tenderness in his neck and in the back left side of his head but also noted that his range of motion was fairly well preserved. *See id*. She diagnosed Plaintiff with neck strain, prescribed several pain medications, and referred him to physical therapy. *See id*. Plaintiff attended several sessions of physical therapy, where he demonstrated "more or less full" range of motion in his neck. *See id*. at 165. The physical therapist discharged Plaintiff on May 18, 1999, because his situation had not improved. *See id*.

Plaintiff returned to Dr. Sirico on June 2, 1999, complaining of neck pain brought on by performing yard work with a weed whacker. *See* SAR at 198-99. Dr. Sirico noted that Plaintiff had mild tenderness along the base of his skull but also noted that he retained excellent cervical range of motion. *See id*. at 198. She found no significant spasm and recommended Plaintiff to pain management. *See id*. at 199.

Pain management specialist Dr. Howard Smith examined Plaintiff on September 23, 1999. *See* SAR at 157-59. Plaintiff complained of a steady ache in the left occipital region of his head since the car accident. *See id*. at 157. Dr. Smith found that Plaintiff's neck was supple and that his range of motion was within normal limits. *See id*. at 158. Plaintiff demonstrated full muscle power,

---

[1] Ultram is an analgesic that is used to manage chronic pain in adults who require constant pain treatment. *See* 2009 PDR 6077-1600.

full sensation, and intact reflexes in his upper extremities. *See id*. Further, Dr. Smith found no atrophy or edema in Plaintiff's extremities. *See id*. Dr. Smith noted three trigger points and diagnosed Plaintiff with myofascial pain syndrome and possible facet syndrome. *See id*. Dr. Smith administered trigger point injections to Plaintiff's neck and gave him Ultram, Baclofen[2], and Vioxx.[3] *See id*. at 158-59.

Plaintiff saw Dr. James Cole on October 25, 1999, and told Dr. Cole that he was trying to repair and refinish furniture in small increments. *See* SAR at 180. Plaintiff indicated that he was independent in his personal activities. *See id*. Dr. Cole found that Plaintiff had full flexion and extension in his neck and did not find any trigger points. *See id*. Dr. Cole opined that Plaintiff had sub-occipital trauma with contusion and a possible muscle tear of the sub-occipital muscles. *See id*. at 181. Dr. Cole prescribed Soma[4] and a topical gel. *See id*. at 181. Dr. Cole opined that Plaintiff's injuries would preclude him from resuming his previous work as a blaster. *See id*.

Plaintiff saw Dr. Edward Foley on December 13, 2000, complaining of chronic headaches since his accident. *See* SAR at 57-58. Plaintiff stated that he treated his pain with Ultram and denied any other problems. *See id*. at 57. Dr. Foley determined that Plaintiff experienced tenderness over the left side of his neck and that he had no motor or sensory problems. *See id*. at

---

[2] Baclofen is a muscle relaxant. *See* Stedman's Medical Dictionary (27th ed. 2000).

[3] Vioxx is a non-steroid anti-inflammatory drug that is used to treat arthritis, acute pain, and chronic headaches. *See* 2005 WL 4061433 (PDR).

[4] Soma is a muscle relaxant that is often used as an adjunct to therapy and rest in the treatment of acute musculoskeletal conditions. *See* 2005 WL 4061356 (PDR). It is not related to the hallucinogenic drug of the same name that featured prominently in the Aldous Huxley novel *Brave New World*.

58.  Dr. Foley concluded that chronic neck pain caused Plaintiff's headaches, prescribed Neurontin,[5] and continued Ultram.  *See id*. at 58.  Plaintiff later discontinued Neurontin.  *See id*. at 61.

Plaintiff treated with Dr. Thomas McCormack on February 15, 2001.  *See* SAR at 313-14. Plaintiff complained of severe neck pain radiating to the back of his head and down his left arm, with numbness and tingling in his left hand.  *See id*. at 313.  Dr. McCormack found that Plaintiff had normal muscle bulk, tone, and power.  *See id*. at 313.  Plaintiff's sensation remained intact to light touch and pinprick, and deep tendon reflexes were intact in all extremities.  *See id*.  Dr. McCormack further found that, despite experiencing neck pain, Plaintiff had full range of motion in his neck.  *See id*.  The doctor opined that Plaintiff's left arm was not problematic and recommended a cervical discectomy.  *See id*. at 314.

Dr. George Wootan conducted a neurological examination of Plaintiff at the Commissioner's request on May 2, 2001.  *See* SAR at 70-73.  Dr. Wootan observed that Plaintiff had an "essentially normal" range of motion and that Plaintiff's reflexes, motor strength, and sensation were intact in his upper extremities.  *See id*. at 72.  Plaintiff could grasp, handshake, grip, and pinch grip bilaterally; and Dr. Wootan concluded that he saw no reason why Plaintiff could not perform activities that required sitting, standing, walking, and stair climbing.  *See id*.  He opined that Plaintiff could lift and carry with little restriction and handle small objects without difficulty.  *See id*.  Dr. Wootan also stated that Plaintiff had full use of his upper and lower extremities.  *See id*.  Dr. Wootan finally noted that his findings might change based on the results of Plaintiff's upcoming surgery.  *See id*.

Dr. Amelita Balagtas saw Plaintiff on May 2, 2001, also at the Commissioner's request.  *See*

---

[5] Neurontin is used to manage nerve pain and sensitivity.  *See* 2006 WL 384572.

SAR at 74-76. Dr. Balagtas noted that Plaintiff had a somewhat limited range of motion in his cervical spine and limited forward flexion of the lumbar spine. *See id.* at 75. Dr. Balagtas found tenderness over the left paracervical muscle but no spasm. *See id.* Dr. Balagtas further found that Plaintiff had full range of motion in his upper extremities with no sign of muscle atrophy or sensory abnormality. *See id.* Plaintiff had full grip and grasp strength bilaterally. *See id.* Dr. Balagtas' prognosis of Plaintiff was "fair to guarded," and she concluded that Plaintiff would have some limitations in activities that required bending, lifting, prolonged sitting and standing, and overhead reaching. *See id.*

On May 2, 2001, Dr. McCormack wrote that Plaintiff was "totally disabled at this time" and would remain so until approximately four months after his May 25, 2001 discectomy and fusion. *See* SAR at 108.

Dr. Alan Auerbach, a State agency physician, reviewed Plaintiff's medical records on May 14, 2001. *See* SAR at 79. Dr. Auerbach stated that, although Plaintiff's MRI revealed spinal stenosis at C5-C6, Plaintiff retained "essentially full" range of motion in his neck. *See id.* Dr. Auerbach opined that Plaintiff could lift ten pounds, stand or walk for approximately six hours of an eight-hour workday, and sit for approximately six hours of an eight-hour workday. *See id.*

Plaintiff underwent a cervical discectomy and fusion at C5-C6 on May 25, 2001. *See* SAR at 311-12.

Dr. McCormack completed an assessment of Plaintiff for the Greene County Department of Social Services on June 6, 2001. *See* SAR at 81-82. Dr. McCormack reported that Plaintiff would be unable to work until he recovered from the surgery but also indicated that Plaintiff had no limitations in the areas of walking, standing or sitting. *See id.* at 81-82. Dr. McCormack

determined that Plaintiff was moderately limited in using his hands and very limited in lifting, carrying, pushing, pulling, and bending. *See id*. at 81. Dr. McCormack opined that Plaintiff had a severe impairment that had lasted or was expected to last twelve months, noting that Plaintiff was injured in March of 1999. *See id*. at 82.

On August 16, 2001, a disability analyst completed an RFC assessment of Plaintiff. *See* SAR at 111-18. The analyst determined that Plaintiff could lift ten pounds occasionally and less than ten pounds frequently, that he could sit for about six hours in an eight-hour workday, stand or walk for about six hours in an eight-hour workday, and that he was not limited in his ability to push or pull. *See id*. at 112. Moreover, the analyst stated that Plaintiff was well-healed from his surgery, that his motor and sensory functions were "good," and that x-rays revealed a successful alignment of the fused area. *See id*. at 113. The analyst agreed with Dr. Balagtas' opinion that Plaintiff would experience some limitation with bending, lifting, overhead reaching and sitting or standing for a prolonged period. *See id*. at 117. The analyst disagreed with Dr. Wootan's opinion that Plaintiff could perform all activities with little or no restriction. *See id*.

Plaintiff treated with Dr. Dominic Sette-Ducati, a neurologist, on April 1, 2003, complaining of headaches and swelling in the back of his neck. *See* SAR at 315-16. Dr. Sette-Ducati found that Plaintiff experienced some "squaring" of the left deltoid muscle that caused minimal difficulty. *See id*. at 316. He further observed that Plaintiff had full range of motion in his neck in some directions but limited range of motion in others. *See id*. Dr. Sette-Ducati concluded that Plaintiff's examination was "only suggestive of the C5-C6 residual radiculopathy on the left." *See id*.

On April 11, 2003, Dr. Wingartner completed an RFC assessment of Plaintiff.[6] *See* SAR at 317-22. Dr. Wingartner concluded that Plaintiff could lift ten pounds occasionally and ten pounds frequently, that he could stand or walk at least two hours in an eight-hour workday and sit for about six hours in an eight-hour workday, and that he was not limited in his ability to push and pull. *See id*. at 318. Dr. Wingartner also found that Plaintiff was limited in his ability to engage in overhead reaching. *See id*. at 319.

Plaintiff went to the emergency room of Columbia Memorial Hospital on August 30, 2003, complaining of neck pain and headaches. *See* SAR at 327-31. The emergency room physician found that Plaintiff had normal upper and lower extremity strength, reflexes, coordination, and gait. *See id*. at 329. An x-ray of Plaintiff's cervical spine showed evidence of Plaintiff's C5-C6 discectomy and fusion but no abnormalities. *See id*. at 329, 331.

Plaintiff underwent a psychiatric evaluation at Greene County Mental Health Center on January 16, 2004. *See* SAR at 348. The examiner found that Plaintiff's thought process was coherent and relevant and that he did not manifest psychotic symptoms. *See id*. Plaintiff's mood was euthemic and his affect was appropriate to his mood. *See id*. Plaintiff's comprehension and memory were intact, and his attention and comprehension were "ok." *See id*. The examining physician diagnosed Plaintiff with an occupational problem and alcohol dependence in remission. *See id*. Plaintiff received a prescription for Zoloft.[7] *See id*. at 349. Plaintiff returned to Greene County Mental Health Center on March 3, 2004. *See* SAR at 350. Plaintiff had not yet filled the

---

[6] This RFC appears to constitute the only time Dr. Wingartner analyzed Plaintiff's condition.

[7] Zoloft is a selective seratonin reuptake inhibitor that is used to treat major depressive disorder in adults. 2006 WL 384628 (PDR).

prescription for Zoloft that he had received on January 16, 2004, but his mental status was nevertheless normal. *See id*. Plaintiff next visited the Greene County Mental Health Center on March 16, 2004. *See id*. at 351. The examining physician found Plaintiff to be stable and his mental health exam yielded no abnormal signs. *See id*.

In Plaintiff's pre-hearing disability reports, he stated that he performed self-care, cooked two meals a day for himself, and did laundry and housecleaning. *See* SAR at 283-85. Plaintiff wrote that he traveled by walking, driving, getting rides with others, or riding a bicycle. *See id*. at 285. He stated that he could go out alone. *See id*. Plaintiff described weekly activities of shopping, performing household chores, driving, and socializing. *See id*. at 287. Plaintiff stated that he could walk a quarter of a mile at a time and that he walked for exercise three to four times per week. *See id*. at 290. Plaintiff stated that his hobbies and interests were watching television, fishing, and camping. *See id*. at 288. Plaintiff represented that he had no trouble paying attention or following written or spoken instructions. *See id*. at 290. Plaintiff also stated that stress or changes of schedule did not affect him and that he had no trouble with his memory. *See id*. at 291. He stated that he no longer took medication for his neck pain and headaches because it was not effective. *See id*. at 293.

At the hearing, Plaintiff affirmed that he refused to take his prescription pain medication, despite his continued pain. *See* SAR at 416. He further stated that he had not received any medical treatment since 2001 due to his lack of medical insurance. *See id*. at 415. Regarding his daily activities, Plaintiff testified that he occasionally went shopping or out to eat with his wife. *See id*. at 420. Plaintiff also stated that he did a small amount of vacuuming and played with his two stepchildren. *See id*. at 419. Plaintiff further testified that in the past year he had gone camping

once (although it caused him such fatigue that he doubted his ability to ever camp again) and attended two concerts. *See id.* at 421. Plaintiff stated that, when he had a headache, he was unable to watch television or movies. *See id.* at 420.

### III. DISCUSSION

**A.     Standard of Review**

*1. Substantial evidence*

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). However, where the court has

> "a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."

*Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) (quotation omitted).

*2. Five-step determination of disability*

To be eligible for DIB, a claimant must show that he suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability to engage in substantial gainful activity ("SGA") by reason of a medically determinable physical or mental impairment that can be expected to cause death or last for twelve consecutive months. *See* 42 U.S.C. § 1382c(a)(3)(A). To

determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> 1) The ALJ first determines whether the claimant is engaged in SGA. *See* 20 C.F.R. §§ 404.1520(a)(4)(i).  If so, the claimant is not disabled. *See id*.
>
> 2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).  If not, the claimant is not disabled. *See id*.
>
> 3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings").  If so, the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii).
>
> 4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do his past relevant work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  If so, he is not disabled. *See id*.
>
> 5) If the claimant cannot perform his past relevant work, the ALJ determines if he can perform other work, in light of his RFC, age, education, and experience.  *See* 20 C.F.R. § 404.1520(a)(4)(v).  If so, then he is not disabled. *See id*.  A claimant is only entitled to receive disability benefits if he cannot perform any alternative gainful activity. *See id*.; *see also Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step, if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998).

**B.    Dr. McCormack's opinion**

The ALJ must give controlling weight to the opinion of a treating physician where that opinion is "supported by medically acceptable clinical and laboratory diagnostic techniques and is

-12-

not inconsistent with other substantial evidence in the record." *Audi v. Astrue*, No. 07-CV-1220, 2009 WL 3199481, *13 (N.D.N.Y. Sept. 30, 2009) (citing *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993)); *see also* 20 C.F.R. § 404.1527(d)(2).

If an ALJ does not give controlling weight to a treating physician's medical opinion, the weight he accords that opinion depends on several considerations. *See Audi*, 2009 WL 3199481, at *13; *see also* 20 C.F.R. § 404.1527(d)(2). These considerations are "'(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist.'" *Audi*, 2009 WL 3199481, at *13 (quoting *Clark v. Comm'r of Social Security*, 143 F.3d 115, 118 (2d Cir. 1998)); *see also* 20 C.F.R. § 404.1527(d)(2). Moreover, the ALJ must "'give good reasons'" for the weight he accords to a treating physician's medical opinion. *See Audi*, 2009 WL 3199481, at *13 (quotation omitted).

Where an ALJ finds against the claimant, he must set forth the specific reasons for the weight he assigned to a treating source's opinion. *See* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, *5 (July 2, 1996); *see also Lunan v. Apfel*, No. 98-CV-1942, 2000 WL 287988, *5 (N.D.N.Y. Mar. 10, 2000) (holding that remand was necessary because the ALJ did not discuss the weight he assigned or the reasons for assigning such weight to treating source opinions as 20 C.F.R. § 404.1527(d) requires).

Furthermore, the ALJ has the duty to "recontact" a treating physician for clarification if the treating physician's opinion is unclear. *See Mitchell v. Astrue*, No. 07 Civ. 285, 2009 WL 3096717, *17 (S.D.N.Y. Sept. 28, 2009) (citing 20 C.F.R. § 404.1512(e) (stating that, "[w]hen the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are

disabled, we will need additional information to reach a determination or a decision'")). This duty to recontact requires the Commissioner to "'seek additional evidence or clarification' from the claimant's treating sources when their reports 'contain[ ] a conflict or ambiguity that must be resolved.'" *Id*. (quoting *Osorio v. Barnhart*, No. 05-CV-1188 (FB), 2007 U.S. Dist. LEXIS 38067, at *15, 2007 WL 1519531 (E.D.N.Y. 2007)); *see also* 20 C.F.R. § 404.1512(e)(1).

In the instant matter, although Dr. McCormack was a treating physician, the ALJ assigned only some weight to his opinion. *See* SAR at 22. This analysis was proper. Since Dr. McCormack's opinion regarding the severity and extent of Plaintiff's limitations contradicted the opinions of Drs. Wootan, Auerbach, and Wingartner, as well as the opinion of the disability analyst, it was appropriate for the ALJ to find that Dr. McCormack's opinion was not consistent with the record as a whole and not to grant it controlling weight. *See id*. at 70-73, 79, 112-13, 318-19. At the next step of the analysis, the ALJ found that Dr. McCormack's opinion was internally inconsistent. *See* SAR at 21-22. The inconsistency between Dr. McCormack's diagnosis of total disability and his finding that Plaintiff had no limitation in the areas of sitting, standing, or walking demonstrates that Dr. McCormack's opinion is inconsistent with itself and, therefore, with the record as a whole. It is also inconsistent with Dr. Wootan's conclusion that Plaintiff could perform activities that required sitting, standing, walking, and stair climbing. *See* SAR at 72.

In addition, the ALJ did not have a duty to recontact Dr. McCormack regarding his opinion. An ALJ need only seek clarification from a physician where the evidence that the physician provides is inadequate to assist in a determination of disability. *See Mitchell*, 2009 WL 3096717, at *17. Here, the fact that Dr. McCormack's opinion was inconsistent with the medical record as a whole demonstrated to the ALJ that Plaintiff was not disabled. Moreover, the ALJ did not indicate

that he found anything about Dr. McCormack's opinion to be ambiguous or confusing, such that recontact would be required. *See* SAR at 18-26. Instead, the ALJ found that Dr. McCormack's opinion found little support both internally and from the other medical evidence in the record. *See* SAR at 21-22.

Accordingly, the Court finds that the ALJ properly weighed Dr. McCormack's opinion and that he was not under a duty to recontact Dr. McCormack.

C. **The consultative medical examiners' opinions**

An ALJ may confer controlling weight upon a medical opinion where it is a medical opinion that comes from a treating source, where the opinion is well-supported by medically acceptable clinical and laboratory evidence in the record, and where the opinion is not inconsistent with the other substantial evidence in the record. *See* SSR 96-2p, at *2. When determining if the opinion is well-supported by medical evidence in the record, "it is not necessary that the opinion be fully supported by such evidence." *See id*. In all other respects, the legal analysis of the weight assigned to Dr. Wootan's opinion and Dr. Balagtas' opinion is the same as the above analysis of Dr. McCormack's opinion.

In the instant matter, the ALJ granted controlling weight to Dr. Wootan's opinion, reasoning that it was well-supported by and consistent with the evidence in the record. *See* SAR at 24. He gave little weight to Dr. Balagtas' opinion, stating that her opinion "contrast[ed] sharply with the other evidence of record." *See id*. at 4.

The ALJ did not err in his analysis of Dr. Wootan's opinion. Dr. Wootan was a treating source in Plaintiff's medical history. His opinion finds support from Drs. Smith, Cole, Foley, and

McCormack, who all found that Plaintiff had intact neurological signs. *See* SAR at 58, 158, 181, 313. In addition, Drs. Sirico, Smith, McCormack and Auerbach all found that Plaintiff had full or nearly full range of motion in his neck and cervical spine. *See id*. at 79, 158, 203, 313. Moreover, post-surgical x-rays of Plaintiff revealed no abnormalities. *See id*. at 329. Finally, Dr. Wootan's opinion is not inconsistent with the other substantial evidence in the record. In fact, there are only two medical opinions that clash with Dr. Wootan's. First, Dr. Balagtas' opinion contains only minimal differences. Dr Balagtas found that Plaintiff had normal neurological signs and full range of motion in his upper body. *See* SAR at 75. She did, however, find that Plaintiff had a more limited range of motion in his cervical spine, and she concluded that Plaintiff had some limitations in activities that required bending, lifting, prolonged sitting and standing, and overhead reaching. *See id*. Importantly, however, Dr. Balagtas never opined that Plaintiff was disabled; she merely assessed Plaintiff as slightly more limited than Dr. Wootan did. The only other opinion that conflicts with Dr. Wootan's is the disability analyst's August 16, 2001 opinion that specifically refutes Dr. Wootan's findings regarding Plaintiff's limitations. *See* SAR at 117. However, since a state agency consultant is not an acceptable medical source under the regulations, the ALJ need not accord the consultant's opinion much weight. *See* 20 C.F.R. § 416.913; *see also McArthur v. Comm'r of Soc. Sec.*, No. 3:06-CV-860 2008 WL 4866049, *14 (N.D.N.Y. Nov. 7, 2008).

The ALJ also properly analyzed Dr. Balagtas' opinion. Since her opinion was the most restrictive of the medical opinions regarding Plaintiff's limitations, it contradicted other opinions in the medical record, such as Dr. Wootan's opinion, Dr. Auerbach's opinion, and the disability analyst's opinion, all of which indicated that Plaintiff could lift and carry some weight and sit, stand, or walk for at least six hours of an eight-hour workday. *See* SAR at 72, 79, 112. It was therefore

appropriate for the ALJ to find that Dr. Balagtas' opinion was not consistent with the record as a whole and not to grant it controlling weight. Next, because inconsistency with the record as a whole is also one of the considerations for weight assignment under 20 C.F.R. § 404.1527(d)(2), substantial evidence supports ALJ Zolezzi's decision to discount Dr. Balagtas' opinion. Therefore, the Court finds that the there is substantial evidence in the record that supports the ALJ's analysis of the consultative medical examiners' opinions.

### D.     Dr. Bostic's opinion

Although "[t]he Social Security Regulations do not contemplate that the opinions of a non-examining physician be treated as substantial evidence," *Velazquez v. Astrue*, No. 06-CV-0343, 2008 WL 4911765, *1 (W.D.N.Y. Nov. 13, 2008) (citations omitted), these opinions may constitute substantial evidence where they are in turn supported by substantial evidence in the record, *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993); *see also* SSR 96-6p, 1996 WL374180, *2 (July 2, 1996) (stating that the opinions of non-examining physicians "can be given weight only insofar as they are supported by evidence in the case record . . .").

In the instant matter, the ALJ noted that Dr. Bostic was not an examining physician and gave some weight to her opinion. *See* SAR at 23. The ALJ averred that Dr. Bostic's opinion was consistent with other medical evidence in the record where she determined that Plaintiff could lift ten pounds on a frequent and occasional basis and sit, stand, and walk for at least six hours in an eight-hour workday. *See id.* The ALJ reasoned that the medical record as a whole revealed that Plaintiff had a history of neck impairment that had not significantly interfered with his functional capability. *See id.* Dr. Bostic's opinion finds support from the other evidence in the record; and it

therefore constitutes substantial evidence. For example, Plaintiff's hearing testimony regarding his daily activities indicated that he could function at a relaxed level, despite his neck pain. Plaintiff testified that he shopped and went out to eat with his wife. *See* SAR at 420. Plaintiff also stated that he did small amounts of vacuuming and played with his two stepchildren. *See id*. In the year before his hearing, Plaintiff went camping once, albeit uncomfortably, and attended two concerts. *See id*. at 421. In addition, multiple doctors found that Plaintiff had full or nearly full range of motion in his neck, full range of motion in his upper extremities, and normal nerve activity. *See id*. at 58, 72, 75, 79, 158, 181, 203, 313. These medical opinions support a finding that Plaintiff could lift small amounts of weight and sit, stand, and walk for six hours of an eight-hour workday. Therefore, the Court finds that there is substantial evidence in the record to support the ALJ's analysis of Dr. Bostic's opinion.

### E. The Greene County Mental Health Center's report

The ALJ need not explicitly weigh every piece of evidence in the record. *See Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (holding that, where the ALJ discusses a piece of evidence in a manner which indicates that he is aware of the evidence, it is reasonable to infer that he considered that evidence in forming his conclusions regarding the plaintiff's ability to work (citing *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability")).

In the instant matter, Plaintiff contends that the ALJ erred because he neither discussed the

Greene County Mental Health Center's report nor recontacted that facility to clarify its findings. *See* Dkt. No. 7 at 7.  However, the ALJ mentions and discusses the Greene County Mental Health Center's report, referring to the "mental status examination performed on January 16, 2004." *See* SAR at 19.  Under *Monguer*, the Court can assume that the ALJ read the report and incorporated its findings into his reasoning.  *See Monguer*, 722 F.2d at 1040.  A s a result, the Court does not need to attempt to glean the ALJ's rationale, where he clearly discusses Plaintiff's mental health.[8] Therefore, the Court finds that the ALJ discussed the Greene County Mental Health Center opinion regarding Plaintiff.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

---

[8] The ALJ's discussion of the Greene County Mental Health Center's report states that, since the mental health physicians found that Plaintiff had no signs of distress or psychiatric symptoms, he would have no trouble meeting the mental challenges of employment. *See* SAR at 19.  The Court notes that the Greene County Mental Health Center's report constitutes substantial evidence to support the ALJ's conclusion that Plaintiff did not suffer from a severe mental impairment.

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: March 29, 2011
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge